SAMUEL C. WILLIAMS, Admr., *v.* JOHN McD. WILLIAMS et al.

1. RESTATING FINAL ACCOUNT—NOTICE TO PARTIES.—Where the probate court, hav-ing heard the parties (the administrator and exceptors), restated the final account, and entered a final decree in the case, it was erroneous and highly improper after-wards to open the case upon petition of one of the parties, and make, without notice to the others interested, a second final decree, directing the administrator to pay certain counsel fees of one of the parties.

2. DEPRECIATED MONEY—ADMINISTRATOR CHARGEABLE WITH ONLY ITS ACTUAL VALUE. When an administrator has sold the personal property of his intestate in the regular course of his administration, receiving depreciated money therefor, and shall show to the satisfaction of the court that he has been unable to use any or all of the same, he is chargeable with only the actual value of the amount on hand and not used. Act of 1865, ch. 11, p. 142, § 4.

Error to the probate court of Chickasaw county. OWEN, J.

The plaintiff in error assigned the following errors :

1st. The court erred in the restatement of the second annual, and final account, in this : 1st. That it struck out and disallowed the sum of $1,354 by administrator paid to Samuel C. Williams for his probated claim, as is shown by voucher No. 7 to said account.

2d. The court erred in charging the administrator for so much *good money,* the sum of nine hundred dollars, which was contemplated to be paid in confederate money, as per charge made against himself for the hire of negro.

3d. By rendering final balance liability against the admin-istrator in *good funds,* for the sum of $910, when the proof shows that all the current funds that ever came into the hands of the administrator is the $10 cash, found and obtained, belonging to decedent at the time of her death.

4th. The court erred in rendering a second final decree, in this : 1st. That after rendering its final decree in the cause, after disposing of the whole issue joined by the parties liti-

gant (the administrator on the one side and the exceptors on the other), the court, without notice to other parties in interest, entertained a petition, filed by the defendants in error, for the recovery of attorney's fees, and rendered *another final decree*, a judgment against the administrator for the sum of $136 50 in favor of Allen White and McFarland & McIntosh, to be paid out of the funds found in his hands belonging to the heirs jointly.

5th. The court erred in its rulings upon the pleadings, in this: 1st. It overruled the motion of the administrator to strike out respondent's exceptions, No. 1 in the original bill of exceptions, and Nos. 1 and 6 in the amended bill of exceptions to the final account;. and Nos. 2 and 4 in the bill of exceptions to the amended final account; 2d. It sustained the fourth exception to vouchers five and six to the final account of administrator.

*Martin & Bates*, for plaintiff in error.

The deceased at the time of her death, was indebted by note to Samuel C. Williams, (afterwards the administrator) in the sum of $954. This note was regularly probated by the payee, and allowed by the probate judge, and paid off by the administrator. It was *prima facie* a legal, valid claim, and was entitled to be allowed by the court on final settlement. The exceptors, in moving its disallowance, assume the burden of proving and showing that it was not a legal and valid claim against the estate. The mere allegation of a want of consideration without proof, does not rebut the *prima facie* evidence of consideration created by the note itself. The administrator in his replication, denied the truth of the alleged want of consideration and demanded proof, but there was none adduced by exceptors—to sustain this exception was gross error. The exceptors allege that said note was void for want of consideration, and aver that it was given to secure the difference in value, of certain shares drawn by deceased and the administrator, as distributees of the estate of Samuel Williams deceased, and which

had been exchanged by them, the deceased and the said administrator, in violation of the will of said Samuel Williams, deceased. Exceptors adduce no proof of these allegations, but rely on certain recitals in the record. These recitals are formed in the report of the commissioners who divided the estate of Samuel Williams, deceased. These facts neither prove nor corroborate the allegations of the exceptions in their bill of exceptions. The distributees under the will, took a life estate in the property they respectively decree, and each had a perfect right to sell or dispose of his interest as he chose, and the difference in the values in this case, was clearly a legal, valid consideration for the note, and it was clearly error not to allow it in stating the final account.

The court below also erred in refusing to allow the administrator credit for the proper difference between the value of Confederate money (in which the negro hire charged against him was contemplated to be made), and good money or current funds. The liability was reported in 1865, and was *prima facie* to be paid in Confederate money. See acts of 1867. And yet the court held the administrator to account for the $954 in good or current funds. But the most glaring error was in this, that after the final settlement and allowance of the account of the administrator, and all matters in issue between the administrator and parties contesting, making final distribution of the estate to the heirs and distributees, determining their respective rights to the estate, the court received the petition of the exceptors to revise and reverse the first final decree, and rendered a second final decree, without notice to the heirs and distributees, and decreeing the administrator to pay counsel fees, etc. This was error too palpable for argument.

*Allen White,* for the defendant in error.

The note is not now a valid claim against the estate of Esther Williams, if it ever was, and the administrator is estopped by his own acts, from assenting to its validity now.

The value of slave, Martin, $1,300; balance due Esther, to make up her share, $379; value of slaves drawn by the administrator, $26 33; difference in shares of administrator and Esther, $13 33. Add $379 to $954 (amount of the note), and we have $1,333. This is presumptive proof showing that the note was given for the difference in value of the slaves. But this matter is put at rest by the administrator's first replication. It matters not what was the basis of the trade, the administrator charged himself in his inventory, and final accounts, with the slave Martin. It were absurd to hold him liable for the hire of his own slave. This is conclusive against him. Singleton v. Garrett, 23 Miss., 198; Franks v. Wanzer, 25 Miss., 127; Lee v. Dozier, 40 Miss., 477; Effinger v. Richards, 35 Miss., 549–550; Crowder v. Shackelford, ib., 395; 1 Greenl. Ev., § 194; 3 ib., § 373.

The administrator plays a double game. In his original account he prays an allowance of a credit of $1,696 30 in Confederate money, proceeds of the sales, and in his amended account, produces the receipts of the heirs for the same money. If there were no debts, he committed a fraud in obtaining an order to sell; if there were debts, and he failed to apply the money to their payment, he is still liable. In receiving Confederate money and letting it die on his hands, the administrator is bound to make good the loss. Rev. Code, 443, art. 81–86; Bailey v. Dilworth, 10 S. & M., 409; Gulledge v. Berry, 31 Miss., 346.

The administrator contends that the court erred in holding him liable for $900, hire of slave, Martin, as so much good money, when the hire was to be paid in Confederate money. The final account filed in February, 1866, shows that the $910, reported in the inventory as deemed good, was then good money, and was so considered by the administrator himself.

6th. The court erred in overruling the fourth exception to the amended account. In his original account he reports the proceeds of the sale as worthless, and asks credit for it. In his amended account he reports that he has paid the same

proceeds to the heirs, and files their receipts as a full settlement of the estate, and complete disposition of all the assets in his hands, including the $910 in good money. Rev. Code, 451, arts. 106, 107–117, 118; Kilcrease v. Shelby, 23 Miss., 166; Crowder v. Shackleford, 35 Miss., 354.

TARBELL, J.:

This case comes to this court by appeal from the probate court of Chickasaw county upon exceptions to final account and decree in the settlement of the estate of Esther Williams, deceased. Several causes of error are assigned, as follows:

1st. The court erred in striking out and disallowing the sum of $1,354 by administrator paid to Samuel C. Williams for his probated claim, as is shown by voucher No. 7 to said account.

2d. The court erred in charging the administrator for so much *good money*, the sum of nine hundred dollars, which was contemplated to be paid in Confederate money as per charge made against himself for the hire of negroes.

3d. By rendering final balance liability against the administrator in *good funds* for the sum of $910, when the proofs show that all the current funds that ever came into the hands of the administrator is the $10 cash found and obtained, belonging to decedent at the time of her death.

The court erred in rendering a *second final decree* in this:

1st. That after rendering its final decree in the cause, after disposing of the whole issue joined by the parties litigant (the administrator on the one side and the *exceptors* on the other), the court (without notice to other parties in interest) entertained a petition filed by the defendants in error for the recovery of attorney's fees, and rendered *another final decree*, or judgment in favor of Allen White, and McFarland and McIntosh, to be paid out of the funds found in his hands belonging to the heirs jointly.

By reference to the record, it appears that S. C. Williams, the administrator, paid to himself the sum of $1,354, being the amount of a note and interest, probated as executed to and due him from the deceased. The note is for $954, dated

December 15, 1858, and signed by a X cross, "her mark," without witness. The payment of this note is the subject of the first exception, which alleges that the note is void and without consideration, having been given for the difference in the value of slaves exchanged by and between the administrator and the said Esther, contrary to and in violation of the will of Samuel Williams, deceased, and husband of Esther.

Referring to the will of Samuel Williams, deceased, it appears that therein in 1856, he directed a division of his property by appraisers, into lots, to be distributed by "drawing," his wife, Esther, being one of the distributees; and the will declares that "each lot drawn to each name shall be that heir's property, to be good unto them, their children, and their children's children, and at the death of my beloved wife, Esther Williams, the property willed to her to be equally divided between the following named heirs," etc.

S. C. Williams drew a lot valued at $2,633, which was $954 above his distributive share, while Esther drew a lot valued at less than her share. And it is alleged by the exceptors that the note from Esther to him, if given at all, was for this difference in exchange of slaves thus drawn in lots. This note was probated on the testimony of the administrator and payee alone, and, as already stated, paid to himself. It appears further, that the administrator charged himself with the sum of $900 for the hire of the slave, Martin, who was drawn by Esther, and the exceptors contended that this was a virtual abandonment of the exchange, and that the administrator was thus estopped from setting up the note as a valid claim against the estate. If not admitted, we do not understand the administrator to deny the allegation of the consideration of the note nor that the slave whose hire he charged to himself, and the slave drawn by Esther were one and the same.

The probate court sustained the exception, and this action of the court constitutes the first assignment of error.

As the cause will be remanded, however, the questions

surrounding the note will be considered open upon the rehearing, including its execution, consideration, etc., for further examination.

It appears from the record, that having heard the parties, the administrator and the exceptors, the probate court restated the final account, and entered a final decree in the cause, when, without notice to those interested, upon the petition of one of the parties, the court made a second final decree, directing the administrator to pay to the counsel of one of the parties a sum named for services in the cause. This *ex parte* action of the court without notice to those having a right to appear to contest, and interested in contesting the allowance to counsel, was highly improper. This assignment of error is well taken.

Errors are alleged in the rulings of the court upon the pleadings, but so entirely imperfect and inartistic is the record in this respect, we are unable to obtain any correct understanding of the rulings referred to. It is, however, immaterial, as the case must be sent back for the reason already given.

This disposes of the alleged errors. Several exceptions were taken and passed upon by the court below, not referred to in the assignment of errors. As to exceptions to vouchers *five* and *six*, embracing an aggregate of $5, we are unable from the record to determine their merits.

In relation to the sale of the personal property of the intestate for Confederate currency, we refer to the laws of 1865, chap. XI, p. 142, pamphlet acts, sec. 4, which is as follows:

" *Be it further enacted,* That where any executor, administrator or guardian has heretofore received, on account of said estate or ward any Confederate money, or other depreciated money or currency, in due course of business, or in pursuance of the statutes of the State of Mississippi at the time of receiving the same, and when such executor, administrator or guardian, shall show to the satisfaction of the

court that he has been unable to use any or all of the money so collected by him, said executor, administrator or guardian shall only be chargeable with the actual value of said money on hand, not used by him as aforesaid."

As to the sale and distribution without the order of the court referred to in the record, and discussed by counsel, when this cause is again heard in the court below, there will be no difficulty in protecting the rights of minor heirs, as over the whole case the chancery court of Chickasaw county will possess ample power to do justice and bestow equity to all concerned—the provisions of the statute being full, clear and explicit on all the subjects discussed by counsel, or likely to occur in the controversy.

In this connection, we feel compelled to complain of the confused and perplexing record before us as to the arrangement and numbers of pleadings, exceptions and amendments, rendering some of the references in the assignment of errors and arguments, utterly unintelligible. Frequent and unnecessary repetitions occur without proper distinctions and designation by numbers, and otherwise tending only to confuse, requiring wholly unnecessary labor, and consuming time demanded in other causes.

We refer to this subject, not because the record before us is exceptional, but because our patience is nearly exhausted with this class of records.

The judgment of the court below is reversed, and the cause remanded for further proceedings.